**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X INDEX NO.: 08 CV 03332
**CELESTE J. MATTINA, Regional Director,**       **JUDGE DENNY CHIN**
**Region 2, National Labor Relations Board,**
**For and on Behalf of the**
**NATIONAL LABOR RELATIONS BOARD**

                                        Petitioner,

        -against-                              **AFFIRMATION IN OPPOSITION**

                                                **ECF CASE**

**SAIGON GRILL GOURMET RESTAURANT, INC.**
**& SAIGON SPICE, INC. d/b/a**
**SAIGON GRILL RESTAURANT**

                                        Respondent.
-------------------------------------------------------------------X

        Harold H. Weisberg, under penalty of law for perjury, affirms as follows:

    1.   That your deponent is an attorney and counselor at law admitted to practice in

courts of the State of New York and this court and I am a partner in the firm of

Weisberg & Weisberg, Esqs., the attorney for the Respondents in the above entitled

matter.  That I make this Affirmation on behalf of S. Michael Weisberg, Esq., who is

handling this matter and is incapacitated at the present time and on behalf of the

Respondents in opposition to the Petitioner's Order to Show Cause, requesting an

injunction and restraining order against the Respondent.

    2.   That the Respondents each own a Vietnamese restaurant and their principal is

Simon Nget.

The restaurant owned by Saigon Grill Gourmet Restaurant, Inc., is located at 620

Amsterdam Avenue, New York, NY, and the restaurant owned by Saigon Spice, Inc.,

is located at 63 University Avenue, New York, NY.  Both restaurants are operated

individually, are separate corporations and maintain separate books, records and accounts. However, at a hearing before the National Labor Relations Board, the Administrative Judge held they were one unit.

3.    An extensive hearing was held and the Administrative Court then decided the case.  A copy of the decision is attached hereto and made a part hereof, marked Exhibit "A".  Although, the decision was an adverse one and to which I did file some objections, a copy of which is likewise attached hereto and made a part hereof, marked Exhibit "B", the Respondents have complied with the decision. In fact your deponent wrote a letter to every one concerned, dated February 25, 2008, that all documented employees are to return to work by March 1, 2008.  This letter is attached hereto and marked Exhibit "C".

4.    Out of the entire group of deliverymen, only 6 showed up who were documented.  As the immigration laws became more stringent, and jail terms were indicated for employers who hired undocumented employees, Mr. Nget had no other alternative.

5.    Whereas, Mr. Nget had two locations, one location was marginal and had few employees.  In the decision of the National Labor Relations Board there is an indication if more proof was shown, the Board may go along with having all employees return to the Amsterdam Avenue location.  This was shown in the Employers Brief (Exhibit B).  There was no problem taking all documented employees to work at Amsterdam Avenue, as the delivery service at the University store was totally discontinued.

6.    Of the 6 men who reported for work, one person was asked for his

documentation, and he said he was not ready to come back.

A second former employee told Mr. Nget that he will return after the 10th of April. He called and said he was coming back to work.

A third former employee told Mr. Nget that he doesn't want to come back at this time. Anytime these three men come back to work, they have their jobs waiting fore them.

7. The working conditions are broken down to two shifts. The morning shift is from 11:30 AM to 2:30 PM. The 2nd shift, a dinner shift, is from 5:30 PM to 10:00 PM. The actual shift is from 5:30 PM to 9:30 PM, however, the help are given free dinner at 9:30 PM and they are paid for this extra half hour.

Of the 3 remaining employees, one works the dinner shift, which is the exact shift he performed prior to his discharge.

The second works 4 days on the lunch shift and 6 days on the dinner shift. The 3rd employee works 5 days on the lunch shift and six days on the dinner shift.

It is a fact that the delivery business is not that good as before. However, it is picking up and these two employees have first option if they want to work six days on the lunch shift.

8. The pay scale is slightly above the minimum wage. The minimum wage is $4.60 per hour. These men are paid $5.15 per hour. They are making substantially more then their previous salaries.

9. Never has the Respondent-employer interfered, restrained or coerced employees. There were no unfair labor practices exercised by the employer.

10. Any acts of the Respondent-employer prior to the decision plays no part in

these proceedings. The only question here is whether the defendants have complied with the decision by the Administrative Law Judge of the National Labor Relations Board, to the letter of the law.

11. The employees have been reinstated to their former positions.  Out of each paycheck, Federal Taxes, State Taxes and City Taxes are being deducted plus the employees share of Social Security.  It may be difficult that in the end they may end up with less money in their pockets, but this is required by law.

12. It is not true that they have declined to return to work under the altered term and condition of employment being imposed.  By the time this reply is in front of the Judge, a 4th employee has returned to work, and a 5th employee will soon return to work.  Instead of Mr. Rucker speculating why the 6th has not returned to work, why don't we have an affidavit as to him.

WHEREFORE, Respondents request that Petitioner's motion be denied in all respects and for such other and further relief as the court may deem just and proper.

Dated: New York, NY
     April 21, 2008

Weisberg & Weisberg, Esqs.

_____
By:Harold H. Weisberg, Esq. (1646)
Attorney for Saigon Gourmet
Restaurant Inc. and Saigon Spice
Inc.
2463 Broadway
New York, NY 10025
212-787-7760

**To:**   **Jamie Rucker (JCR 6767)**
       **National Labor Relations Board**
       **Region 2**
       **26 Federal Plaza, Room 3614**
       **New York, NY 10278**

EXHIBIT "A"

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**DIVISION OF JUDGES**
**NEW YORK BRANCH OFFICE**

**SAIGON GOURMET RETAURANT, INC.**
**AND SAIGON SPICE, INC., a SINGLE**
**EMPLOYER d/b/a SAIGON GRILL**
**RESTAURANT**

|                |                          |
|----------------|--------------------------|
| **And**        | **Case No. 2-CA-38252**  |

**318 RESTAURANT WORKERS UNION**

Jaime Rucker, Esq., Counsel for the
General Counsel
S. Michael Weisberg, Esq., Counsel for
the Respondent
Ivonne Brown, Esq., Counsel for the
Union

**DECISION**

**Statement of the Case**

RAYMOND P. GREEN, Administrative Law Judge. I heard this case in New York on December 3,5 and 6, 2007. The charge and the amended charge were filed on May 14 and July 30, 2007. A Complaint was issued on September 28, 2007 and an Amended Complaint was issued on November 8, 2007. The amended Complaint alleged as follows:

1.   That Saigon Gourmet Restaurant, Inc. and Saigon Spice Inc., constitute a single employer within the meaning of the Act.

2.   That on or about March 2, 2007, the Respondent by Simon Nget, its Owner, **(a)** interrogated employees about their union and protected concerted activities, **(b)** promised to raise wages if employees agreed to cease engaging in union activities and **(c)** threatened to close the delivery department and discharge those employees in retaliation for their union activities.

3.   That or about March 3, 2007, the Respondent by Simon Nget, **(a)** promised to raise employee wages, **(b)** told employees that their activities were futile and **(c)** interrogated employees about their union and protected concerted activities.

4.   That on or about March 3, 2007, the Respondent discharged all of its delivery

employees employed at 620 Amsterdam Avenue, because they signed a document authorizing a wage and hour lawsuit.  It is further alleged that Respondent ceased operating its delivery service at this location on this date.

    5.    That on or about March 5, 2007, the Respondent discharged all of its delivery employees employed at 93 University Place, because they either signed a document authorizing a wage and hour lawsuit or because they engaged in other concerted activity or because they engaged in union activity.   It is further alleged that Respondent ceased operating its delivery service at this location on this date.

    6.    That on various dates after March 30, 2007 the Respondent by Simon Nget, Leanna Nget, a manager, and by persons named Timmy and Kenny, engaged in video surveillance of the picketing activity of its employees.

On the entire record, including my observation of the demeanor of the witnesses, and after considering the briefs filed, I make the following [1]

## I. Jurisdiction

It is undisputed that the two restaurants in question meet the Board's retail standards for asserting jurisdiction. I therefore conclude that the Company is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.  I also conclude that the Union is a labor organization within the meaning of Section 2(5) of the Act.

## II. Alleged Unfair Labor Practices

The two restaurants in question are solely owned by Simin Nget.  He is also the sole officer and shareholder.  One of the restaurants is located at 620 Amsterdam Avenue and the other is located at 93 University Place.  Both are in Manhattan.  Mr. Nget is person who does the hiring and firing and he sets wages and other employment policies at both locations.   The evidence also shows that there is some degree of interchange between the two locations, with some employees working at both.

Although each restaurant is a separate corporation, the evidence shows that that there is common ownership, common management and common control of labor relations.  As such, I conclude that for purposes of the National Labor Relations Act the two constitute a single employer.  Lihli Fashions v NLRB, 151 LRRM 2943 (2nd Cir. 1996) and Flat Dog Productions, Inc. 347 NLRB No. 104 (2006).

The Restaurant at Amsterdam Avenue employed about 22 delivery persons in addition to a larger complement of kitchen and server employees.  The restaurant at University Place employed about 6 delivery people.  From inception of these operations, the Employer has provided sit-down, take-out and food delivery services.  For the most part, the delivery people utilize their own bicycles and work from about noon to around 9 or 10 p.m.  Their income normally is derived from tips, but they are also paid a small sum for each shift.  I am not here to decide or discuss whether these employees received the appropriate legal minimum for tipped employees.  Nevertheless, there is no question that employees talked about this subject and were not happy with their incomes.

There was some evidence that this Union has undertaken organizational activities among other Chinese or Asian restaurants in Manhattan and that there was some coverage of this in Chinese language papers.  But to say, as the General Counsel argues, Mr. Nget was therefore aware of any union organizational efforts at his restaurant is speculative at best.

On February 28, 2007, a number of the employees signed union authorization cards.  At the same time they also signed authorizations to participate in a wage and hour law suit against Saigon Grill.  There is no evidence to show that the Employer, before its decision to discharge the

delivery employees, became aware of their union support.  But the wage and hour matter was an entirely different story.

_____

¹ I hereby grant the General Counsel's unopposed motion to correct the Record.

It is essentially admitted that on May 2, 2007, two employees approached Nget and requested/demanded that the pay of the delivery employees be increased and that unless this was done he would be sued.  It also is clear that Nget understood that he was being threatened with a lawsuit concerning the alleged failure of his restaurants to meet the minimum wage requirements. He thereupon decided to call a meeting with the delivery employees who worked at the Amsterdam location and tried to dissuade them from filing a lawsuit.  In substance, he offered them an extra $5 per shift.  This offer was rejected.

Although the Respondent asserted, (without really offering any proof), that the delivery service was not profitable and would have been terminated in any event, the testimony of Nget establishes that had the employees accepted the extra $5 per shift and dropped the idea of suing him about wages, he would have continued the delivery service.  In this regard, I also note that the delivery operation has always been an integral part of Nget's business from the opening of his restaurants.

In any event, after the conclusion of the meeting, Nget decided to terminate the delivery service at both restaurants and by March 4 effectuated that decision and notified all of the delivery people that their services were no longer needed.

Following the cessation of the delivery service, the employees, in conjunction with the Union set up a picket line.  It is admitted that during the course of the picketing, Nget, on various occasions, had the picketers videotaped.  While asserting that this was done in relation to alleged picket line misconduct, the Respondent failed to adequately offer any proof to support that assertion.

III. Analysis

**Although the General Counsel argues that one of the motivations for the discharge of the delivery drivers was because they signed union authorization cards or expressed their support for the Union, there is no objective evidence that convinces me that (a) the Respondent was aware of this activity or (b) that his decision to terminate the delivery service was motivated by union activity.  Further, I do not conclude that the Respondent's promise of $5 extra per shift was related to his fear that the employees were seeking unionization.   Nor do I conclude that the Respondent coercively interrogated employees about their union membership or activities or that he threatened employees with plant closure because of their union membership or activities.**

Nevertheless, Section 7 of the National Labor Relations Act, not only protects union activity it also protects concerted activity for "mutual aid and protection". And the case law, establishes that the actions of employees to prepare for the filing of a lawsuit under the Fair Labor Standards Act, is concerted activity as that term is defined in Section 7. Eastex, Inc vs. NLRB, 437 U.S. 556, 563-578 and n. 15 (1978); Igramo Enterprise Inc. 351 NLRB No. 99 (2008); U Ocean Palace Pavilion, Inc. 345 NLRB 1162 (2005); and Kysor Industrial Corp., 309 NLRB 237, (1992). The Supreme Court made it clear in Eastex that pursuant to Section 7 of the Act, employees are protected from discharge or other retaliation for their concerted actions in seeking to improve their working conditions through "resort to administrative and judicial forums" and through "appeals to legislators to protect their interests as employees."

Accordingly, as it is my conclusion that the Respondent decided to discharge all of its delivery employees because he believed that at least some of them would initiate a lawsuit claiming wages under the Fair Labor Standards Act, I find that these discharges impinged on the protection afforded to employees under Section 7 of the Act and therefore violated Section 8(a)(1) of the Act. [2]

I also conclude that the videotaping of employees constituted a violation of 8(a)(1) of the Act. Thus, in F.W. Woolworth Co., 310 NLRB 1197, (1993), in finding a violation of Section 8(a)(1), the Board, with member Oviatt dissenting, stated:

As the judge recognized, the Board has long held that absent proper justification, the photographing of employees engaged in protected concerted activities violates the Act because it has a tendency to intimidate. Waco, Inc., 273 NLRB 746, 747 (1984…. Here the record provides no basis for Respondent reasonably to have anticipated misconduct by those handbilling, and there is no evidence that

misconduct did, in fact, occur.  Unlike our dissenting colleague, we adhere to the principle that photographing in the mere belief that "something 'might' happen does not justify Respondent's conduct when balanced against the tendency of that conduct to interfere with employees' right to engage in concerted activity."

Conclusions of Law

1.     By terminating its delivery service and discharging all of its delivery employees because the Respondent believed that these employees intended to file a lawsuit under the Fair Labor Standards Act, the Respondent has violated Section 8(a)(1) of the Act.

2.     By videotaping employees who engaged in peaceful picketing activity, the Respondent has violated Section 8(a)(1) of the act.

3.     The aforesaid unfair labor practices affect commerce within the meaning of Section 2(2), (6) & (7) of the Act.

4.     The Respondent has not violated the Act in any other manner.

Remedy

_____

² In my opinion, the termination of the delivery service and the consequent discharge of the delivery employees is not encompassed by Textile Workers Union of America v. Darlington Mfg. Co., 380 U.S. 263 (1965) or its progeny.  Darlington established the proposition that an Employer can close its entire business without

violating the Act even if motivated by unlawful reasons.  The court also stated that an employer could be liable in a situation where it partially closed its operations if that action chilled unionization elsewhere.  For one thing, I don't think that the facts in this case amount to a partial closing as that term has been used in Darlington of other cases where an employer permanently closed a plant or terminated a separate business operation.  For another, since the delivery employees worked in close proximity to the restaurant's other employees, their discharge for concerted activities, would necessarily deter those other employees from seeking redress for any other violations of minimum wage or other labor laws.  Cub Branch Mining, 300 NLRB 57, 59 n 20 (1990).  See also George Lithograph Co., 204 NLRB 431 (1973), where the Board concluded that the closing of a mailing division for anti-union reasons, would necessarily act as a deterrent to the exercise of Section 7 rights by other employees who worked in the same building and who operated under the same immediate management.

Having found that the Respondent has engaged in certain unfair labor practices, I find that they must be ordered to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act.

The General Counsel seeks inter alia, an Order requiring the Respondent to reinstate all of the delivery employees who were discharged on March 3 and 4, 2007. This would require the Respondent to reinstate its delivery service operations.

In We Can Inc., 315 NLRB 179 (1994), the Board stated:

When an employer has curtailed operations and discharged employees for discriminatory reasons, the Board's usual practice is to order a return to the status quo ante-that is, to require the employer to reinstate the employees and restore the

operations as they existed before the discrimination – unless the employer can show that such a remedy would be unduly burdensome. [3]

As there is no capital equipment or other investment that would be required to restore the delivery service, it could hardly be said that a restoration remedy would be unduly burdersome.

It may be that a restored delivery service might not be profitable if the employees are reinstated under terms that are in compliance with various federal and state employment laws. [4] But as of now, this is purely speculative and nothing in this recommended Order would compel the Employer to continue to operate this service on a loss basis.  If the future operation of a delivery service under these new conditions is ultimately not feasible, then the Employer may discontinue it so long as its decision is not based on illegal considerations.

In We Can, Inc., supra, the Board, although refusing to reopen the record, did amend the Administrative Law Judge's recommended Order to provide that restoration and reinstatement would be required "unless the Respondent can establish at compliance – on the basis of evidence that was not available at the time of the unfair labor practice hearing – that those remedies are inappropriate."  See also Ferragon Corp., 318 NLRB 359 (1995).

In view of the above, I shall recommend that the Respondent, having discriminatorily discharged employees, must offer them reinstatement and make them whole for any loss of earnings and other benefits, computed on a quarterly basis from the dates of discharge to the date of proper offers of reinstatement, less any net interim earnings, as prescribed in F.W. Woolworth Co., 90 NLRB 289 (1950), plus interest as computed in New Horizons for the Retarded, 283 NLRB 1173 (2987).

I shall further recommend that the delivery service be restored.  Although I can see no present basis for failing to restore the delivery service operation, I shall recommend that the Respondent be allowed at the Compliance stage of the proceedings, to try to establish, based on new evidence that the restoration of this operation would not be feasible.

As the Respondent's employees are largely Chinese speaking, it is recommended that the Notices be in Chinese and English.

---

[3] See also Ferragon Corp., 318 NLRB No. 37 (1995).

[4]Among the laws applicable to employees are those relating to (1) minimum wages and overtime (2) workers compensation; (3) federal and state income tax, and (4) social security.

On these findings of fact and conclusions of law and on the entire record, I issue the following recommended.

ORDER

The Respondent, Saigon Grill Restaurant Inc., and Saigon Spice Inc., d/b/a Saigon Grill Restaurant, its officers, agents, and representatives, shall

1.   Cease and desist from

(a)   Discharging employees because of their concerted activity of indicating

their intention to file a lawsuit under the Fair Labor Standards Act.

       (b)  Videotaping employees who are engaged in peaceful picketing.

       (c)  In any like or related manner interfering with, restraining or coercing employees in the rights guaranteed to them by Section 7 of the Act.

    2.  Take the following affirmative action necessary to effectuate the policies of the Act.

       (a)  Within 14 days from the date of this Order, offer the delivery employees Full reinstatement to their former jobs, or if those jobs no longer exist, to substantially equivalent positions, without prejudice to their seniority or any other rights or privileges previously enjoyed and make them whole for any loss of earnings and other benefits suffered as a result of the discrimination against them in the manner set forth in the Remedy section of this decision.

       (b)  Within 14 days from the date of this Order, remove from its files any reference to the unlawful actions against the delivery employees and within three days thereafter, notify them in writing, that this has been done and that the discharges will not be used against them in any way.

       (c)  Preserve and, within 14 days of a request, or such additional time as the Regional Director may allow for good cause shown, provide at a reasonable place designated by the Board or its agents, all payroll records, social security payment records, timecards, personnel records and reports, and all other records, including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of this Order.

       (d)  Within 14 days after service by the Region, post at its facilities in New York, New York, copies of the attached notice marked "Appendix".  Copies of the notice, on forms provided by the Regional Director for Region 2, after being signed by the Respondent authorized representative, shall be posted by the Respondent immediately upon receipt and maintained for 60 consecutive days in conspicuous places including all places where

notices to employees are customarily posted. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material. In the event that, during the pendency of these proceedings, the Respondent has gone out of business or closed the facility involved in these proceedings, or soled the business or the facilities involved herein, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondents at any time since March 3, 2007.

(e)  Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

IT IS FURHTER ORDERED, that the complaint is dismissed insofar as it alleges violations of the Act not specifically found.

Dated, Washington, D.C., February 11, 2008

_____

Raymond P. Green

Administrative Law Judge

APPENDIX

NOTICE TO EMPLOYEES

Posted by Order to the

National Labor Relations Board

An Agency of the United States Government

**The National Labor Relations Board has found that we violated the National Labor Relations Act and has ordered us to post and abide by the notice.**

**Section 7 of the Act gives employees these rights.**

**To organize**

**To form, join, or assist any union**

**To bargain collectively through representatives of their own choice**

**To act together for other mutual aid or protection**

**To choose not to engage in any of these protected concerted activities.**

**WE WILL NOT discharge our delivery employees because of their concerted actions in seeking to enforce by way of a lawsuit, the Fair Labor Standards Act.**

**WE WILL NOT videotape employees who are engaged in peaceful picketing.**

**WE WILL NOT in any like or related manner interfering with, restraining or coercing employees in the rights guaranteed to them by Section 7 of the Act.**

**WE WILL** restore the delivery operation and reinstate the delivery employees who have been found to have been illegally discharged, immediate and full reinstatement to their former jobs or, if those jobs no longer exist, to substantially equivalent positions, without prejudice to their seniority or any other rights or privileges previously enjoyed, and make them whole for any loss of earnings and other benefits suffered as a result of the discrimination against them.

**WE WILL** make whole the delivery employees, for the loss of earnings they suffered as a result of the discrimination against them.

**WE WILL** remove from our files any reference to the unlawful discharges and notify the employees in question, in writing, that his has been done and that these actions will not be used against them in any way.

SAIGON GOURMET RESTAURANT, INC. and

SAIGON SPICE, INC., d/b/a SAIGON GRILL

RESTAURANT

_____

(Employer)

Dated _____     By: _____

(Respresentative)          (Title)

Exhibit "B"

## SAIGON GOURMET RESTAURANT INC.
## AND SAIGON SPICE INC.

### CASE NO. 2-CA-38252

### EMPLOYERS BRIEF:

S. Michael Weisberg, Esq., an attorney and counselor at law, being the attorney for the above named Employer hereby files the following exception to the Administrative Law Judge decision.

1.      The Administrative Law Judge found that Saigon Gourmet Restaurant Inc., and Saigon Spice Inc., constitute a single employer within the meaning of the Act.  This I take exception to because the restaurants, although owned by one man, were operated as individual locations.  They have separate employees, separate books, separate tax I.D. numbers and had nothing to do with each other.  There were separate mangers and separate employees.

2.      The Administrative Law Judge states that on March 2nd 2007, the respondent Simon Nget, (a) interrogated employees about their union and protected concerted activities.  There is no testimony to this effect.  None.  (b) promised to raise wages if employees agreed to cease engaging in union activities.  The word union was never mentioned.  Simon Nget said that if they were not satisfied with their salaries he would give them raises of $5.00 each for each shift.  (c) threatened to close the delivery department and discharge these employees "in retaliation for their union activities.  This is not true.  What he said and testified to was that if they did not accept the offer of wage increases, it was the best he could do and he would have to discontinue the take out service.  There was not one word of union activities.

3.      On March 3rd, 2007, Simon Nget (a) did promise to raise employees wages, (b) did tell employees that their activities were futile (because he had no more money to give them) (c) but never interrogated employees about their union and protected concerted activities.  No where in all of the testimony was this ever mentioned.

4.    On March 3rd, the employees were discharged from 620 Amsterdam Avenue but there was never any testimony that they signed a document authorizing a wage and hour lawsuit.

5.    On March 5, 2007 the respondent did discharged all of the delivery employees at 93 University Place, but, not because they signed a document authorizing a wage and hour law suit or they engaged in other concerted activity.  There is no testimony to this effect.  Simon Nget was ill that day.  He sent his wife to discontinue the delivery service and authorized to give each of the employees a two weeks severance pay.

6.    The only reason the respondents and his employees took video of the pickets was because they threatened customers, called them names, threatened Simon Nget's family and caused a sit in, in the restaurant.  Theses pictures were never shown at the hearing and therefore, can not be considered "Video Surveillance as it was for protection! Whereas the respondent "Failed to adequately offer proof to support the assertion" of the misconduct of the pickets, the General Counsel, at the hearing who had the video, which Simon Nget gave to him, failed and or refused to show them. The proof were the tapes and we had no control.

Whereas, it is hard to question the analysis alleging the respondent violated Section 7 of the National Labor Relations Act.  The respondent however deeply disagrees with the alleged violation.   In the Woolworth Co., cause it clearly states, "that absent proper justification" it is a violation.  As the General Counsel refused to show the video, who is to say there was not "proper justification".  This violation I hereby object to.  In fact, attached hereto and made apart hereof, marked Exhibit "A", is a police complaint made May 4, 2007, which speaks for its self.  These are the acts of people who take things into their own hands.  Before you allege the respondent violated a Section, what Sections of the National Labor Relations Law did the pickets violate.

### REMEDY

Part of the remedy is for the employer to rehire all employees.   There are two locations involved here, 620 Amsterdam Avenue and 91 93 University Place, where there was six deliverymen.  The take out department did less than 10% of the business. The cost of the deliverymen, the packer, the packer's assistant, the cost of the plastic knives, forks and spoons, napkins and containers for the soup, spices and what ever else was required

made this department, at 91 93 University Place unprofitable and was operating at a loss. In any event, the delivery service at this location would have been discontinued.  Attached hereto and made a part hereof, mark Exhibit "B" is documentation showing that the delivery service operated at a loss and had to be discontinued.  See Exhibit "B" attached hereto and made apart hereof.

If the decision is upheld and the respondent is required to hire back all the deliverymen he will do so but only at the 620 Amsterdam Avenue location.  It is also understood that the respondent is now required to comply with the law and must hire only documented employees.

As to the back pay that they may be entitled to I call the courts attention to the Supreme Court of the United States Case, No 00-1598, Hoffman Plastic Compounds, Inc., Petitioner vs. National Labor Relations Board, dated March 2, 2002.   The decision specifically holds:

> " We therefore conclude that allowing the Board to award back pay to illegal aliens, would unduly trench upon explicit statutory prohibitions critical to Federal Immigration Policy, as expressed in IRCA"… see the entire decision attached hereto and marked Exhibit "C".

In a memorandum from the OFFICE OF THE GENERAL COUNSEL , dated _____, it clearly states:

> THE HOFFMAN decision arguably does not effect the BOARDS remedy in A.P.R.A., because the employer in Hoffman was unaware that the discrimatee, was undocumented when it hired him.  However, the clear thrust of the majority opinion precludes back pay for all unlawfully discharged undocumented workers regardless of the circumstances of their hire".

See memorandum GC 02-06 from the OFFICE OF THE GENERAL COUNSEL page 3, 2nd paragraph 1st sentence, attached hereto and marked Exhibit "D".

I attached also The Intersection of Immigration Law and Labor Law which specifically sets forth cases which held in effect – "the court interpreted Hoffman as applying only to the very specific remedy of back pay for work "not performed" Hoffman specifically applies when an undocumented worker seeks back pay for work "not performed".

See Exhibit "E" attached hereto and made apart hereof.

Dated: New York, N.Y.
February 29, 2008

_____
S. Michael Weisberg, Esq.

Attorney for Saigon Gourmet
Restaurant Inc. and Saigon Spice Inc.
2463 Broadway
New York, N.Y. 10025
212-787-7760

TO:     Boards Office of the
Executive Secretary
1099 14th Street, N.W.
Washington, D.C. 20570

Raymond P. Green
Administrative Law Judge
120 West 45th Street, 11th Fl.
New York, N.Y.

Jamie Rucker, Esq.
Counsel for the General Counsel
26 Federal Plaza, Room 3614
New York, N.Y. 10278

Yvonne Brown, Esq.
125 Court Street
Brooklyn, New York 11217

Exhibit "C"

February 25, 2008

**VIA FEDERAL EXPRESS**

Raymond P. Green
Administrative Law Judge
26 Federal Plaza, Room 2614
New York, N.Y. 10278

Jamie Rucker, Esq.
Counsel for the General Counsel
26 Federal Plaza, Room 2614
New York, N.Y. 10278

Yvonne Brown, Esq.
125 Court Street
Brooklyn, New York 11217

318 Restaurant Workers' Union
5411 7th Avenue
Brooklyn, N.Y. 11220

Re: National Labor Relations Board
Vs. Saigon Gourmet Restaurant Inc. and Saigon Spice Inc.

Gentlemen:

Please be advised that, in view of the decision of Raymond P. Green, Administrative Law Judge, in reference to the hearing of the National Labor Relations Board with Saigon Gourmet Restaurant Inc. and Saigon Spice Inc., pursuant to such decision it is encumber upon my client to re-instate the deliverymen at these restaurants.

Simon Nget, the sole owner, of the above restaurants consents to re-instate all deliverymen. However, the re-instatment is only out of the Saigon Gourmet Restaurant

Inc., located at 620 Amsterdam Avenue, Borough of Manhattan, City and State of New York.

That Mr. Nget will re-instate all documented employees with legal status.

They are to report to work on March 1st, 2008.

They will present themselves at 10:00 am on that day.  Their information will be taken including their Social Security Cards, Alien Registration Cards and any other documentation indicating that they are hear legally and can be gainfully employed legally.

Those who are undocumented need not apply.

They will receive the minimum legal wage for deliverymen.

I enclosed herein a copy of the Notice to Employees which will be posted in both English and Chinese in both restaurants.

Very truly yours,


S. Michael Weisberg

SMW/ln
Cc:        Mr. Simon Nget
           c/o Saigon Gourmet Restaurant Inc.
           620 Amsterdam Avenue
           New York, N.Y. 10024