Jamie Rucker (JCR-6767)
National Labor Relations Board
Region 2
26 Federal Plaza, Room 3614
New York, New York 10278-0104
(212) 264-0300

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------X
**CELESTE J. MATTINA, Regional Director,**
**Region 2 of the National Labor**
**Relations Board, for and on behalf of**
**The NATIONAL LABOR RELATIONS BOARD,**

                 Petitioner

      v.                          08 Civ. 03332

**SAIGON GRILL GOURMET RESTAURANT, INC. &**
**SAIGON SPICE, INC. d/b/a SAIGON GRILL**     J. CHIN
**RESTAURANT**

                Respondent           ECF
-----------------------------------------X

**PETITIONER'S REPLY BRIEF IN SUPPORT OF**
**PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(J)**
**OF THE NATIONAL LABOR RELATIONS ACT**

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ........................................1
II. PROCEDURAL POSTURE ..........................................1
III. FACTS .....................................................2
   A.  Respondent Has Not Reinstated the Alleged Discriminatees to Their Former Positions of Employment or Has Not Offered Them Reinstatement ................................................3
      1.  Li Qiang Lin.............................................3
      2.  Yu Ming Yu..............................................4
      3.  Chen Guo Jin............................................5
      4.  Jian Yun Chen...........................................6
      5.  Ming Hua Chen...........................................7
      6.  Shu Hui Chen............................................8
   B.  Respondent Has Discriminated Against Employees Who Engaged in Protected, Concerted Activities ...........................9
   C.  There Is No Evidence It Would Be Unduly Burdensome for Respondent to Resume Delivery at University Place ...........10
IV.  ARGUMENT ..................................................11
   A.  Introduction .............................................11
   B.  Full Reinstatement of the Alleged Discriminatees to Their Former Terms and Conditions of Employment Is Just and Proper .12
   C.  Restoration of the University Place Delivery Service Is Just and Proper ..............................................15
V.  CONCLUSION AND REMEDY ......................................15

## TABLE OF AUTHORITIES

**Federal Cases**

*Asseo v. Centro Medico Del Turabo, Inc.*, 900 F.2d 445 (1st Cir. 1990) ...............................................17

*Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270 (7th Cir. 2001).12

*Blyer v. Domsey Trading Corp.*, 1991 WL 150817, 139 LRRM 2289 (E.D.N.Y. 1991) ........................................17

*Esmark v. NLRB*, 887 F.2d 739 (7th Cir. 1989)...................14

*NLRB v. Great Dane Trailers*, 388 U.S. 26 (1967) ..............14

*Schaub v. West Michigan Plumbing & Heating*, 250 F.3d 962 (6th Cir. 2001) ...............................................13

*Seeler v. The Trading Port, Inc.*, 517 F.2d 33 (2d Cir. 1975) ...12

*Silverman v. J.R.L. Food Corp. d/b/a Key Food*, 196 F.3d 334 (2d Cir. 1999) ...........................................12

*U.S. v. Torres*, 845 F.2d 1165 (2d Cir. 1988) ...................10

*Weeks v. ARA Services*, 869 F.Supp. 194 (S.D.N.Y. 1994) .........10

**Cases**

*Martin Luther King, Sr., Nursing Center*, 231 NLRB 15 (1977) ....10

## I. **PRELIMINARY STATEMENT**

Petitioner submits this memorandum of points and authorities in further support of its Petition for preliminary injunctive relief and in opposition to Respondent counsel's affirmation in opposition to the Petition.

Briefly, Respondent's argument, made without benefit of any supporting evidence, is that Respondent has reinstated or offered to reinstate each of the alleged discriminatees whose interim reinstatement Petitioner has requested. As demonstrated by the affidavits of Li Qiang Lin, Yu Ming Yu, and Chen Guo Jin, attached as Exhibits F, G, and L to the Petition, and the affidavits of Jian Yun Chen, Chen Guo Jin, Ming Hua Chen, Yu Ming Yu, and Shu Hui Chen, copies of which are attached hereto, Respondent has not reinstated or offered to reinstate any of these employees to their former terms and conditions of employment. Further, by its disparate treatment of the foregoing alleged discriminatees as compared to newly hired employees and others---which is demonstrated by the affidavits attached to the Petition and hereto---Respondent is compounding the effects of its unfair labor practices by making it abundantly clear to its workforce that it will punish those employees who attempt to assert their rights under Section 7 of the National Labor Relations Act ("the Act"), as amended, 29 U.S.C. § 157.

## II. **PROCEDURAL POSTURE**

The course of the underlying administrative proceeding up to the point of the decision of the Administrative Law Judge

("ALJ") was set forth in Petitioner's initial brief in support of its Petition.

Following the issuance of that decision, on about February 29, 2008, Respondent filed exceptions to the ALJ's decision ("ALJD"). Those exceptions are attached to Respondent's Affirmation in Opposition. Counsel for the General Counsel filed a reply to those exceptions and its own set of exceptions to the ALJD on about March 7, 2008.

Petitioner filed its request for preliminary injunctive relief on about April 3, 2008. Following a scheduling conference held April 8, 2008, Respondent was afforded until April 18, 2008 to submit answering papers to the Petition and Petitioner was granted until April 22, 2008 to submit its reply. Following a request for an extension of time by Respondent counsel made April 21, 2008, Respondent was given until the end of that day to submit its response and Petitioner was given until the close of business on April 23 to submit a reply.

## III. **FACTS**

Respondent counsel asserts, without benefit of any supporting documentary or testimonial evidence, that the six alleged discriminatees whose reinstatement is sought by Petitioner have been returned to their former positions, without prejudice to their seniority or other rights and privileges previously enjoyed. The only available evidence, which Respondent wholly fails to rebut, establishes otherwise. Respondent also appears to suggest that it would be unduly

2

burdensome to resume delivery operations at its University Place location. As noted by the Administrative Law Judge, the available evidence is to the contrary.

**A. Respondent Has Not Reinstated the Alleged Discriminatees to Their Former Positions of Employment or Has Not Offered Them Reinstatement**

As demonstrated by the following, Respondent has not fully restored the alleged discriminatees to their former positions of employment.

### 1. Li Qiang Lin

Prior to his discharge, Li Qiang Lin worked 65 hours per week for the Employer. Li Qiang Lin was assigned to work 47 of those hours at the Employer's University Place location; the remainder of his schedule was at Amsterdam Ave. (Petition, Exh. F, ¶ 2 (Li Qiang Lin Aff.).) Mr. Lin's earnings comprised a small hourly wage and a much more significant income from tips, which accounted for more than 85% of his earnings. (*Id.* (hourly wages of $520 per month and tips of $3500 per month, or $1.87 per hour in wages and $12.57 per hour in tips, totaling $14.44 per hour).) In about mid-March 2008, Respondent offered Li Qiang Lin employment for only 27 hours per week, all of which were at Amsterdam Avenue, at a rate of $5.15 per hour plus tips. (Petition, Exh. F, at attachment A (March 14, 2008 letter to Li Qiang Lin from Simon Nget).) Although Mr. Lin has been working this schedule, his earnings are thereby greatly reduced.

More precisely, Mr. Lin has lost an average of $548.72 per week by the reduction in hours (the product of the 38 lost hours

per week and his former average hourly earnings), which is offset by only $88.56 per week (by virtue of the difference in his hourly wage multiplied by the number of hours he works per week), for a net loss of $460 per week. (*Compare* Petition, Exh. F, ¶ 2 (Li Qiang Lin Aff.), *with* Petition, Exh. F, at attachment A (March 14, 2008 letter to Li Qiang Lin from Simon Nget).)    Mr. Lin's earnings have been further reduced by Respondent's failure to reinstate its practice of paying delivery people extra for longer distance deliveries.    (Petition, Exh. F, ¶ 12 (Li Qiang Lin Aff.))    In short, Respondent has substantially changed Mr. Lin's work location and reduced his earnings by approximately $2000 per month, cutting his earnings nearly in half.

    2. Yu Ming Yu

Before being fired, Yu Ming Yu worked 33 hours per week at the Employer's Amsterdam Ave. location.    (Petition, Exh. G, ¶ 2 (Yu Ming Yu Aff.).)    Mr. Yu's earnings comprised a small hourly wage and a much more significant income from tips, which accounted for more than 85% of his earnings.    (*Id.* (hourly wages of $348 per month and tips of $2300 per month, or $2.46 per hour in wages and $16.26 per hour in tips, totaling $18.72 per hour).)    In about mid-March 2008, Respondent offered Yu Ming Yu employment at its Amsterdam Ave. facility for 27 hours per week at $5.15 per hour, plus tips.    (Petition, Exh. G, at attachment A (March 14, 2008 letter to Yu Ming Yu from Simon Nget).)    Although Mr. Yu has been working this schedule, his earnings are thereby greatly reduced.

More precisely, Mr. Yu has lost $112.32 per week by Respondent's reduction of his hours (the product of the six lost hours per week and his former average hourly earnings), which is offset by $72.63 per week (by virtue of the difference in his hourly wage multiplied by the number of hours he works per week), for a net loss of $39.69 per week, or $170.10 per month. (*Compare* Petition, Exh. G, ¶ 2 (Li Qiang Lin Aff.), *with* Petition, Exh. G, at attachment A (March 14, 2008 letter to Li Qiang Lin from Simon Nget).) Mr. Yu's earnings have been further reduced by Respondent's failure to resume its practice of paying delivery people extra for longer distance deliveries. (Petition, Exh. G, ¶ 10 (Yu Ming Yu Aff.))

### 3. Chen Guo Jin

Prior to his termination, Chen Guo Jin worked 46 hours per week at the Employer's Amsterdam Ave. location. (Petition, Exh. L, ¶ 2 (Chen Guo Jin Aff.).) Mr. Jin's earnings comprised a small hourly wage and a much more significant income from tips, which amounted to more than 85% of his earnings. (*Id.* (hourly wages of $400 per month and tips of $2800 per month, or $2.02 per hour in wages and $14.20 per hour in tips, totaling $16.22 per hour).) In about mid-March 2008, Respondent offered to employ Chen Guo Jin at its Amsterdam Ave. facility for 27 hours per week at $5.15 per hour, plus tips. (Chen Guo Jin Aff., ¶ 4 (attached hereto).) Mr. Jin's earnings were thereby greatly reduced.

On average, Mr. Jin has lost $308.18 per week by the reduction in hours (the product of the 19 lost hours per week and

his former average hourly earnings), which is offset by $84.51 per week (by virtue of the difference in his hourly wage multiplied by the number of hours he works per week), for a net loss of $223.67 per week, or $958.58 per month. Mr. Jin's earnings have been further reduced by Respondent's failure to continue its practice of paying delivery people extra for longer distance deliveries. (Chen Guo Jin Aff., ¶¶3-4 (attached hereto).) Thus, Respondent has reduced Mr. Jin's earnings by nearly a third.

### 4. Jian Yun Chen

Prior to his March 3, 2007 discharge, Jian Yun Chen worked 75.5 hours per week at the Employer's Amsterdam Ave. location. (Jian Yun Chen June 22, 2007 Aff., ¶ 2 (attached hereto).) Mr. Chen's earnings comprised a small hourly wage and a much more significant income from tips, which constituted more than 80% of his earnings. (*Id.* (hourly wages of $560 per month and tips of $600 per week, or $1.73 per hour in wages and $7.95 per hour in tips, totaling $9.68 per hour).) In about mid-March 2008, Respondent offered Jian Yun Chen 27 hours per week of employment at Respondent's Amsterdam Ave. facility at a pay rate of $5.15 per hour, plus tips. (Petition, Exh. I ((March 14, 2008 letter to Jian Yun Chen from Simon Nget).) Mr. Chen's earnings were thereby greatly reduced.

On average, then, Mr. Chen has lost $469.48 per week as a result of Respondent's reduction of his hours (the product of the 48.5 lost hours per week and his former average hourly earnings),

which is offset by $92.34 per week (by virtue of the difference in his hourly wage multiplied by the number of hours he works per week), for a net loss of $377.14 per week, or more than $1600 per month. Respondent has thereby cut Mr. Chen's earnings in half.

    5. Ming Hua Chen

    Prior to his March 2007 discharge, Ming Hua Chen worked 33 hours per week at the Employer's Amsterdam Ave. location. (Ming Hua Chen Aff., ¶ 2 (attached hereto).) Mr. Chen's earnings comprised a small hourly wage and a much more significant income from tips, which composed more than 85% of his earnings. (Id. (hourly wages of $348 per month and tips of $2600 per month, or $2.46 per hour in wages and $18.03 per hour in tips, totaling $20.49 per hour).)  In about mid-March 2008, Respondent offered Ming Hua Chen employment at its Amsterdam facility for 27 hours per week at $5.15 per hour, plus tips. (Petition, Exh. H ((March 14, 2008 letter to Ming Hua Chen from Simon Nget).)  Mr. Chen's earnings would thereby have been reduced.

    On average, Ming Hua Chen would have lost $122.94 per week as a consequence of Respondent's reduction of Mr. Chen's hours (the product of the 6 lost hours per week and his former average hourly earnings), which would have been offset by only $72.63 per week (by virtue of the difference in his hourly wage multiplied by the number of hours he works per week), for a net loss of $50.31 per week, or $215.61 per month.

    Further, when Ming Hua Chen attempted to contact Simon Nget about returning to work, he was unable to speak with Mr. Nget and

no one from the Restaurant has contacted Ming Hua Chen since about March 15, 2008. (Ming Hua Chen Aff., ¶¶ 6-8 (attached hereto).) As a consequence, Ming Hua Chen has not been reinstated to his former position at all.

### 6. Shu Hui Chen

Before his March 2007 discharge, Shu Hui Chen worked 68.5 hours per week at the Employer's Amsterdam Ave. location. (Shu Hui Chen Aff., ¶ 2 (attached hereto).) Mr. Chen's earnings comprised a small hourly wage and a much more significant income from tips, which accounted for more than 85% of his earnings. (*Id.* (hourly wages of $520 per month and tips of $4000 per month, or $1.77 per hour in wages and $13.62 per hour in tips, totaling $15.39 per hour).) Respondent has not offered Shu Hui Chen reinstatement. (Shu Hui Chen Aff, ¶ 5 (attached hereto).) However, were Respondent to offer Mr. Chen employment on the same terms it has offered to others, Mr. Chen's earnings would thereby be greatly reduced. Mr. Chen would lose, on average, $592.52 per week as a result of Respondent's reduction of his work hours (the product of the 38.5 lost hours per week and his former average hourly earnings). That loss would be offset by only $91.26 per week (by virtue of the difference in his hourly wage multiplied by the number of hours he works per week), for a net loss of $501.26 per week, or more than $2148 per month. Shu Hui Chen would thereby have his earnings cut nearly in half.

**B.    Respondent Has Discriminated Against Employees Who Engaged in Protected, Concerted Activities**

Currently, there are at least eight delivery workers working for the Employer at Amsterdam Ave. (Chen Guo Jin Aff., ¶ 5 (attached hereto); Yu Ming Yu Aff., ¶ 4 (attached hereto).) Two of the former delivery people who returned to work, Quo Jing Liu and Sue Jie Chen, did not participate in the Fair Labor Standards Act suit against the Employer, nor have they joined the Union. (Chen Guo Jin Aff., ¶ 5 (attached hereto); Yu Ming Yu Aff., ¶ 4 (attached hereto).) At least two other employees are new hires. (Chen Guo Jin Aff., ¶ 6 (attached hereto); Yu Ming Yu Aff., ¶ 5 (attached hereto).)

The newly hired employees and the former employees who did not join the Union or participate in the wage and hour lawsuit against the Employer have been given significantly more hours of work than the alleged discriminatees. (Jian Yun Chen Aff. ¶ 7 (attached hereto; Quo Jing Liu says he is working more than 40 hours per week, some of which is "off the clock"); Yu Ming Yu Aff., ¶¶ 6-8 (attached hereto; two new employees are already working when Yu Ming Yu arrives for work and remain after he punches out; Sue Jie Chen says he is working at least 39 hours per week; Quo Jing Liu says he is working 72 hours per week; Yu Ming Yu has observed him working after punching out); Chen Guo Jin Aff., ¶¶ 7-8 (attached hereto; new hires are at work when Chen Guo Jin arrives and have said they work longer hours than he does; Quo Jing Liu has said he is working 72 hours per week and

Chen Guo Jin's wife has observed Quo Jing Liu working until midnight every night of the week).)[1]

### C. There Is No Evidence It Would Be Unduly Burdensome for Respondent to Resume Delivery at University Place

Respondent appears to claim that it would be unduly burdensome to restore its delivery operations at University Place. (Affirmation in Opposition, ¶ 5.) However, Respondent has submitted no evidence to support this claim. Instead, Respondent relies upon an unexplained document of unspecified origin, for which no foundation was provided, and which was not made a part of the record in the administrative proceeding. (*See, generally*, Petition, Exh. A (administrative record of unfair labor practice proceeding, which does not include the proffered document).)

---

[1] The Employer maintains a computerized record system which shows the hours when each delivery employee is making deliveries. (Yu Ming Yu Aff., ¶¶ 9-10 (attached hereto); Chen Guo Jin Aff., ¶ 9 (attached hereto).) Despite being in possession of this record system, the contents of which would serve to prove (or disprove) Petitioner's claims that (i) the alleged discriminatees are not working the same hours that they formerly worked, (Petition at ¶ 13), and (ii) the new hires are working longer hours than the returning workers, (Brief in Support of Petition, p. 37), the Employer failed to offer any of those records in its answering papers. (Indeed, no one with actual knowledge of the hours formerly worked by the former employees now and before they were fired, has provided any testimony in the matter before this Court.) Accordingly, the evidence provided by Petitioner is unrebutted. Further, the Court should draw the following adverse inferences against Respondent: (i) the alleged discriminatees have not been returned to their former conditions of employment; and (ii) Respondent is continuing to discriminate against employees for engaging in concerted, protected activities, namely participating in a wage and hour suit against the Employer. *U.S. v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988); *Weeks v. ARA Services*, 869 F.Supp. 194, 195 (S.D.N.Y. 1994) ("Where relevant information, as in the case of plaintiff's shoes, is in the possession or control of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it"); *Martin Luther King, Sr., Nursing Center*, 231 NLRB 15, n.1 (1977).

Without any explanation of the manner in which the various categories itemized in that document were calculated, the document wholly fails to support the claim that Respondent's delivery service operated at a loss. For example, maintenance of a delivery service at Respondent's University Place facility cannot be expected to have incurred any marginal expense in the category of "rent," since the cost of rent for the facility would be unchanged by operation of the delivery service. Hence, at least $55,000 of the listed expenses should not be applied against the cost of operating a delivery service. That change alone suffices to make the document one that supports the opposite of what Respondent asserts.

Consequently, Respondent has wholly failed to demonstrate that resumption of delivery service at its University Place facility would be unduly burdensome.

## IV.  **ARGUMENT**

### A.    Introduction

Respondent appears to accept that there is "reasonable cause to believe" that it has violated the Act as alleged in the Petition. Respondent adduces no evidence in opposition to Petitioner's argument that Respondent fired all of its delivery workers because they planned to pursue a wage and hour suit against the Employer. (*See* Brief in Support of Petition for Temporary Injunction, pp. 15-23.) Further, as noted in Petitioner's initial submission, this Court should give deference to the ALJ's conclusion that Respondent violated the Act by

discharging its delivery employees and closing its delivery service. *Silverman v. J.R.L. Food Corp. d/b/a Key Food*, 196 F.3d 334, 337 (2d Cir. 1999) (district court must give "appropriate deference" to findings of Board ALJ); *Seeler v. The Trading Port, Inc.*, 517 F.2d 33, 37 n.7 (2d Cir. 1975) (ALJ decision "bolstered" petitioner's finding of reasonable cause); *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 288 (7th Cir. 2001)("the ALJ's factual and legal determinations supply a useful benchmark" to assess petitioner's likelihood of success on the merits).

Consequently, the only question for this Court is whether an order requiring Respondent to (i) reinstate the alleged discriminatees to their former terms and conditions of employment and (ii) restore delivery operations at University Pl. is just and proper. (*See* Brief in Support of Petition at 12-14 and 32 ff.)

**B.    Full Reinstatement of the Alleged Discriminatees to Their Former Terms and Conditions of Employment Is Just and Proper**

From the foregoing evidence, it is plain that two of the six alleged discriminatees have not been offered reinstatement. First, Respondent has never made any kind of reinstatement offer to Shu Hui Chen. Second, Respondent has not answered any of Ming Hua Chen's attempts to speak to Respondent about the conditions under which he would return to work. For all of the reasons set forth at pages 33-36 of Petitioner's initial brief in support of the Petition, an order requiring Respondent to offer reinstatement to these two individuals is just and proper.

Likewise, an order requiring Respondent to return the alleged discriminatees to their former terms and conditions of employment is just and proper. The Employer's sharp reduction in hours of the alleged discriminatees serves only to emphasize to the other employees the cost of engaging in protected activity. Unless the alleged discriminatees are returned to their former conditions of employment, Respondent will plainly communicate to the rest of its workforce exactly how much pain it can inflict on employees who dare assert their rights, and that demonstration will be visible to the other workers every day. That message is reinforced by the fact that the Employer has hired new delivery employees who are being permitted to work longer hours than the reinstated employees and granted longer hours to those employees who did not engage in protected, concerted activities.

This reasoning has found judicial support. For instance, in *Schaub v. West Michigan Plumbing & Heating*, 250 F.3d 962, 971 (6th Cir. 2001), the court upheld the district court's injunction enjoining the employer from discriminating against employees who engaged in union activities or expressed an interest in unionization. The district court held that "employees' ability to exercise their rights to join a union or not will be chilled if such an order is not issued." *Id.* The Sixth Circuit said,

> "This aspect of the district court's injunction makes eminent common sense: given the transfer, isolation, and discharge of Wagner after he joined a union and engaged in discussions about the benefits of unionization with his coworkers, other employees who might have been interested in learning more about the potential benefits of joining a union will be discouraged from doing so."

13

*Id.* An order requiring Respondent to return Yu Ming Yu, Li Qiang Lin, Chen Guo Jin, and Jian Yun Chen to their former terms and conditions of employment is similarly necessary to reassure Respondent's workforce that they are free to engage in acts allegedly protected by Section 7 of the Act.

Respondent's conduct in giving longer hours---and thereby higher earnings---to the employees who did not engage in the protected activity of participating in the wage and hour suit is "inherently destructive" of employee rights. *See Esmark v. NLRB*, 887 F.2d 739, 748-749 (7th Cir. 1989) ("actions which distinguish among workers based on their participation (or lack of participation) in a particular concerted action" is inherently destructive of employee rights; citing cases). The Supreme Court has recognized the potentially continuing effects of such conduct: "The act of paying accrued benefits to one group of employees while announcing the extinction of the same benefits for another group of employees who are distinguishable only by their participation in protected concerted activity surely may have a discouraging effect on either present or future concerted activity." *NLRB v. Great Dane Trailers*, 388 U.S. 26, 32 (1967).

Second, the Respondent's failure to restore the delivery workers to their previous terms and conditions of employment, especially the reduced wages those employees would earn working an abbreviated schedule, produces a strong disincentive for the discharged employees to return to work. Thus, Respondent's refusal to restore the former working conditions of the

discharged workers makes the "scattering" of those individuals all the more likely, thereby resulting in frustration of the Board's ability to adequately remedy Respondent's unfair labor practices when, in due course, a final Board order is issued.

In summary, interim reinstatement of the named discharged delivery workers is just and proper because (i) without it, the passage of time will reinforce the message for the remaining employees that they cannot freely exercise the rights guaranteed them by the law, thereby rendering the Board's remedial powers ineffective and (ii) the discharged employees may scatter, precluding their reinstatement and thereby allowing Respondent to accomplish its unlawful objective.

### C. Restoration of the University Place Delivery Service Is Just and Proper

Restoration of the delivery service at University Place is also just and proper. Absent that remedy, the remaining workers at that location will understand that the cost of exercising their rights to self-organization is the loss of their livelihood. Thus, as argued in Petitioner's Brief in Support of the Petition, pp. 33-35, the remainder of the Employer's workforce at the University Pl. facility will be strongly discouraged from exercising their rights under the Act if the demonstrated consequence of protected activity is the cessation of operations and the concurrent discharge of all the workers.

### V. CONCLUSION AND REMEDY

Essentially, Respondent's position appears to be that preliminary injunctive relief is no longer necessary in this case

because, according to Respondent, it has substantially remedied its unfair labor practices. However, Respondent's provision of part-time work to four of the employees it unlawfully discharged is not only insufficient to remedy Respondent's unlawful conduct but, because of the partial nature of the reinstatement and Respondent's further discriminatory acts, serves to further discourage employees in the exercise of their Section 7 rights.

Given, first, the well-established propriety of the interim relief sought by the Petition in the circumstances of this case and, second, the substantial evidence supporting that Respondent has violated the Act as alleged in the Petition, there is plainly both reasonable cause to believe that Respondent has violated the Act and that interim reinstatement is just and proper.[2] Petitioner therefore seeks an order requiring that, pending the Board's final adjudication of the underlying charge, Respondent cease and desist from discharging employees in response to their protected, concerted activities. Specifically, Petitioner requests an order enjoining Respondent from:

    (a) Discharging employees in retaliation for their concerted, protected activities; and
    (b) In any like or related manner interfering with, restraining or coercing its employees in the rights guaranteed them under Section 7 of the Act.

Petitioner further requests an affirmative order requiring Respondent, pending final Board adjudication, to

---

[2] Petitioner believes that the papers it has submitted in this matter are fully sufficient to permit the Court to enter the requested order and that the requested relief is warranted on the record adduced. However, if the Court is not persuaded, Petitioner is prepared to

(a) Within five (5) days of the issuance of the Court's Order, restore the Employer's delivery services at 620 Amsterdam Ave. and 93 University Place and offer Jian Yun Chen, Yu Ming Yu, Ming Hua Chen, Li Qiang Lin, Chen Shu Hui, and Chen Guo Jin immediate interim reinstatement to their former positions with the Employer, at the hours those individuals previously worked and with the additional distance premiums previously earned, as set forth above and in their statements, displacing if necessary, any workers contracted for, hired, or reassigned to replace them;

(b) temporarily expunge any references to the discharges of the delivery workers from their personnel files and not rely on such discharges in any future discipline imposed prior to a final Board order;

(c) post copies of the District Court's opinion and order, together with a Chinese translation prepared at the Employer's expense and approved by the Regional Director of Region 2 of the Board, at the Employers' facilities where notices to employees are customarily posted; maintain such postings during the Board's administrative proceeding free from all obstructions and defacements; allow all employees free and unrestricted access to said postings; and grant agents of the Board reasonable access to Respondent's facilities to monitor compliance with this posting requirement;[3] and

(d) Within twenty (20) days of the issuance of the District Court's Order, file with the Court, with a copy submitted to the Regional Director of Region 2 of the National Labor Relations Board, a sworn affidavit from a responsible Respondent official setting forth with specificity the manner in which the Respondent has complied with the terms of this decree.

Dated at New York, New York
April 23, 2008

Jamie Rucker
Counsel for Petitioner
National Labor Relations Board
Region 2
26 Federal Plaza, Room 3614
New York, New York 10278-0104
(212) 264-0300

---

submit witnesses and/or provide oral argument on behalf of its position.
[3] *See, e.g., Asseo v. Centro Medico Del Turabo, Inc.*, 900 F.2d 445, 454 (1st Cir. 1990); *Blyer v. Domsey Trading Corp.*, 1991 WL 150817, 139 LRRM 2289, 2292 (E.D.N.Y. 1991).

Ronald Meisburg, General Counsel
Barry J. Kearney, Associate General Counsel
Ellen A. Farrell, Deputy Associate General Counsel
Judith I. Katz, Assistant General Counsel
Karen P. Fernbach, Regional Attorney, Region 2
Donald B. Zavelo, Deputy Regional Attorney, Region 2